IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ARENA ANALYTICS, INC.<br>502 S. Sharp Street<br>Suite 2300<br>Baltimore, Maryland 21201<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>ICAHN SCHOOL OF MEDICINE AT<br>MOUNT SINAI<br>1 Gustave L. Levy Place<br>New York, NY 10029<br><br>and<br><br>MOUNT SINAI HEALTH SYSTEM, INC.<br>1 Gustave L. Levy Place<br>New York, NY 10029<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　Case No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.　　Plaintiff Arena Analytics, Inc. (hereafter "Arena" or "plaintiff") brings this breach of contract case against defendants Icahn School of Medicine at Mount Sinai and Mount Sinai Health System, Inc. (collectively, "Mount Sinai" or "defendants") (plaintiff and defendants are collectively the "parties") to obtain relief for defendants' failure to make over $4.8 million in payments, including late fees, due under the parties' contract. In 2016, defendants entered into a contract with Arena pursuant to which Arena agreed to assist defendants in reducing defendants' rate of employee turnover by applying Arena's technology and know-how to identify employees.

The parties' contract provided that Arena would deliver its services until, at least, September 2022, and that the defendants would pay Arena an annual licensing fee for the valuable services Arena provided.

2.      Despite defendants' unambiguous contractual obligation to pay Arena, defendants have rejected Arena's demands for payment and defendants have failed, without cause, to pay Arena in excess of $4.8 million in fees rightfully due. Arena brings this action to obtain a judgment against defendants for the full amount of Arena's damages arising from defendants' breach of the parties' contract.

## PARTIES

3.      Plaintiff Arena Analytics, Inc. is a data analytics company registered in Maryland, with its headquarters and principal place of business located in Baltimore, Maryland.

4.      Defendant Icahn School of Medicine at Mount Sinai is a New York education corporation organized under the New York Education Law and chartered by the Board of Regents of the State of New York.  Its sole member is defendant Mount Sinai Health System, Inc.

5.      Defendant Mount Sinai Health System, Inc. is a foreign not-for-profit corporation duly organized and existing under the laws of New York. It is the ultimate parent of an integrated health care system encompassing defendant Icahn School of Medicine at Mount Sinai.

## JURISDICTION AND VENUE

6.      There is complete diversity between plaintiff, a Maryland corporation, and defendants, New York corporations, and, accordingly, this Court has subject matter jurisdiction here pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over defendants pursuant to Maryland's Long-Arm Statute, Md. Cts. & Jud. P. § 6-103. Defendants contracted with plaintiff, a Maryland

company, to do work and to provide services which, almost exclusively, were completed and provided in Maryland.  Defendants' extensive, continuing, and ongoing "doing business" contacts with Maryland include entering into a contract with plaintiff, a Maryland company, and defendants' extensive use of plaintiff's Maryland-based services over the course of five years. Further, in the parties' contract, defendants waived any personal jurisdiction and venue objections by agreeing that their agreement "shall be governed by the laws of the State of Maryland" and that any lawsuit arising under the contract would be brought "in the state courts of Maryland or the U.S. District Court for the District of Maryland." Contract at § 14.m.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of events or omissions giving rise to the claim [in plaintiff's complaint] occurred" in this district and because, as noted above, defendants agreed to venue in this district.

## STATEMENT OF FACTS

9.     Arena is a data analytics company. Arena utilizes innovative technology and data analytics to assist organizations around the country in identifying, selecting, and hiring applicants with the goal of reducing turnover.

10.     Defendants contracted with Arena to reduce turnover through a more careful and informed hiring process. Defendants sought Arena's services based on Arena's track record of success.

11.     In 2010, Arena (previously known as "Pegged Software, Inc." and, at the time, a wholly owned subsidiary of Catalyte, Inc. (formerly known as Catalyst IT Services, Inc.)) began using its "Pegged Software" product to help health care organizations, like defendants, improve their hiring outcomes. In 2014, Pegged Software was established as a separate and independent company, which, in 2016, was renamed Arena.

12.     In June 2016, defendants signed a contract with Arena to utilize Arena's services to improve defendants' hiring process with the goal of reducing employee turnover. (While the parties entered into their contract prior to the corporate renaming from Pegged Software to Arena, in the interest of clarity, all references herein are to "Arena" and include, as appropriate, Pegged Software.)

13.     Under the parties' contract, Arena agreed to (1) configure defendants' employee application; (2) integrate defendants' "applicant tracking system" with Arena's program; (3) create applicable "Job Categories"; (4) customize user interfaces in Arena's software to be consistent with defendants' brand; (5) set up administrative users; and (6) train defendants' employees on using Arena's SaaS service. Contract at § 2.1.

14.     Defendants agreed, as consideration for Arena's work, to pay Arena a one-time implementation fee and ongoing licensing fees. Contract at §§ 3.3 and 4.3.  Defendants also agreed to provide access to certain of its employees to facilitate the use of Arena's services, as well as various data sets of defendants' hiring and retention. Contract at § 2.2.

15.     The parties agreed that the one-time implementation fee would be $95,000. Contract at § 2.3. Defendants paid this amount in May 2017.

16.     The parties agreed to "deploy" the services in phases. The first phase, known as the "initial deployment," was a limited version of deployment – the Arena service would be applied to only a subset of defendants' eligible job categories. Contract at § 3.

17.     The parties agreed that the annual fee for initial deployment would be $230,000 and increase by 3% on an annual basis. Contract at § 3.3.  Defendants requested and Arena agreed to provide a $40,000 credit against the initial deployment fee related to third party costs incurred by defendants during the implementation period.

18.     Defendants paid $190,000 in May 2017 for the initial deployment for the period of September 2016 through September 2017, which included the $40,000 credit from Arena.

19.     The second phase was known as "full deployment" – during which the Arena service may be applied to all of defendant Icahn School of Medicine at Mount Sinai's eligible job categories. The parties agreed that full deployment would be triggered once Arena met its "achievement of reduction in turnover."   The contract defined "achievement of reduction in turnover" as a success prediction above 70% in any job category (as judged by either 60, 90, or 180-day turnover metrics) and 13.75% lower than the same turnover rate for the same job category prior to the initial deployment. Contract at § 4. Once this was achieved, Arena was to notify defendants and that day would be the "full deployment date."   The contract stated that the parties would complete three year-long terms of full deployment starting on the full deployment date. The parties agreed that defendants would then pay Arena an annual licensing fee of $1,938,000, which would increase 3% each year. *Id*.

20.     On September 17, 2017, Arena notified defendants that it had reached its achievement metric of reduction in employee turnover. However, defendants requested that Arena delay the full deployment by one year. Arena agreed to this request, creating a second year of initial deployment covering the time period from September 2017 through September 2018 with an annual fee of approximately $237,000.  Defendants paid that amount in December 2017.

21.     In September 2018, Arena invoiced defendants for the full deployment fee of $1,938,000. Defendants did not pay this amount and requested that Arena again delay the full deployment in favor of an "intermediate deployment" covering the time period of September 2018 through September 2019. The intermediate deployment would apply Arena's services to a slightly

larger cohort of defendants' eligible job categories than the initial deployment. Arena agreed to defendants' proposal.

22. On March 21, 2019, defendants paid a reduced fee for the intermediate deployment of $1 million.

23. In September 2019, Arena invoiced defendants for the full deployment fee (through September 2020). The fee for this first year of full deployment was $1,996,140, which equaled the $1,938,000 fee plus 3% escalator agreed to in the contract. Defendants paid this invoice in full on March 9, 2020.

24. The full deployment phase continued for the period of September 2020 – September 2021. This second year required defendants to pay $2,056,024.20, which included the 3% escalator, by November 30, 2020. Despite frequent demands, defendants, in breach of the parties' contract, have not made this payment.

25. On March 29, 2021, defendants notified Arena that it would not renew the parties' agreement beyond the current contracted term, which ran through September 2022.

26. The final payment, $2,117,704.93 for the September 2021 through September 2022 time period, became due on November 30, 2021.  Despite continued demands, defendants, in breach of the parties' contract, have not made this payment.

27. Defendants have defaulted and failed to make payments due to plaintiff. Defendants owe plaintiff $4,173,729.13 for licensing fees and over $683,000 in late fees, which continue to accrue, and plaintiff here sues to recover the full amount it is owed.

**CAUSE OF ACTION**

Defendants Have Breached the Parties' Contract by Failing to Make Payments

28.     Arena adopts and incorporates by reference each and all of the preceding paragraphs and their respective allegations as if each were here fully set forth.

29.     The parties' contract requires that during full deployment, which includes the periods between September 2019 and August 2022, defendants were obligated to pay the base rate plus an annual 3% escalator. Defendants have breached their contractual obligations to plaintiff by failing to make payments now totaling $4,173,729.13, plus over $683,000 in late fees, despite plaintiff's demands for payment.

30.     Plaintiff has demanded the payment it is due, and defendants, without cause and in breach of the parties' contract, have failed and refused to pay.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Arena seeks a monetary judgment against defendants for its breach of the parties' contract in an amount no less than $4,173,729.13, plus no less than $683,000 in late fees, which continue to accrue, interest at the legal rate, the costs and disbursements of this action, and such other and further relief as may be just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial before a jury.

Respectfully submitted,

/s/ Ari S. Casper
Ari S. Casper (14512)
Ralph S. Tyler (01747)
William C. Young (22122)
The Casper Firm, LLC
400 E. Pratt Street, Suite 903
Baltimore, MD 21202
(410) 989-5097 – Phone

7

(410) 630-7776 – Facsimile
acasper@casperfirm.com
rtyler@casperfirm.com
wyoung@casperfirm.com
*Attorneys for Plaintiff*